IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 26-cv-00106-PAB

HECTOR PORTILLO MARTINEZ,

    Petitioner,

v.

JUAN BALTAZAR, Warden of the Denver Contract Detention Facility, Aurora, Colorado, in his official capacity,
ROBERT HAGAN, Field Office Director, Denver Field Office, U.S. Immigration and Customs Enforcement, in his official capacity,
KRISTI NOEM, Secretary, U.S. Department of Homeland Security, in her official capacity,
TODD LYONS, Acting Director of Immigrations and Customs Enforcement, in his official capacity, and
PAM BONDI, Attorney General, U.S. Department of Justice, in her official capacity,

    Defendants.

## ORDER

This matter comes before the Court on petitioner Hector Portillo Martinez's Verified Petition for Writ of Habeas Corpus [Docket No. 1] and Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction [Docket No. 2]. Respondents filed a combined response.[1] Docked No. 12.

---

[1] Petitioner filed a motion for leave to file excess pages in his reply. Docket No. 13. Because the Court does not need a reply in order to rule on the habeas petition and motion for a temporary restraining order or preliminary injunction, it will deny the motion as moot.

## I. BACKGROUND

Petitioner is a citizen of El Salvador.  Docket No. 12 at 3.  On March 21, 2005, petitioner arrived in the United States at or near Eagle Pass, Texas where he was detained by U.S. Customs and Border Protection ("CBP").[2]  Docket No 12-1 at 2, ¶ 5. On March 22, 2005, CBP issued a Notice to Appear, initiating removal proceedings under 8 U.S.C. § 1229(a).  *Id.*, ¶ 6.  The Notice charged petitioner with being inadmissible to the United States pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).  *Id.*  Petitioner was subsequently released from custody due to a lack of bed space in the detention facility where he was being held.  *Id.*, ¶ 7.

On July 13, 2005, petitioner failed to appear for a scheduled master calendar hearing before an immigration judge.  *Id.* at 3, ¶ 8.  The immigration judge conducted an in absentia hearing, sustained the charge of inadmissibility, and ordered petitioner removed to El Salvador.  *Id.*  On October 23, 2007, Immigration and Customs Enforcement ("ICE") officers encountered petitioner in a county jail after he was arrested for traffic violations.  *Id.*, ¶ 9.  After his release from state custody, ICE detained petitioner and attempted to remove him to El Salvador.  *Id.*, ¶ 10.  Petitioner filed a motion to reopen removal proceedings, which triggered an automatic stay of removal. *Id.*, ¶ 11.  Since then, petitioner has been contesting his removal.  *Id.* at 3-5, ¶¶ 12-27. Currently, petitioner's removal proceedings are pending before the immigration court.

---

[2] In a declaration, Deportation Officer Kyle Evans states that, "[o]n March 21, 2005, U.S. Customs and Border Protection (CBP) apprehended Petitioner at or near Eagle Pass, Texas, shortly after he illegally crossed the border into the United States from Mexico."  Docket No. 12-1 at 2, ¶ 5.  Mr. Evans does not allege the exact date that petitioner entered the United States.  *See generally id.*  Petitioner claims that he "has spent twenty years in the United States."  Docket No. 1 at 2, ¶ 1.  The Court need not resolve the date on which petitioner entered the country, finding it undisputed that he has been in the United States since at least March 21, 2005.

*Id.* at 5, ¶ 31.  ICE detained petitioner after he complied with a "call-in letter" ICE sent him requesting that petitioner voluntarily appear on November 23, 2025 for an "In Person Check-in" at its office in Centennial, Colorado.  Docket No. 1 at 15-16, ¶ 43.  Petitioner is being detained at the Denver Contract Detention Facility in Aurora, Colorado.  *Id.* at 2.  Respondents claim that petitioner is being detained pursuant to 8 U.S.C. § 1225(b).  Docket No. 12-1 at 5, ¶ 29.

On January 9, 2026, petitioner filed a Verified Petition for Writ of Habeas Corpus, Docket No. 1, and a motion for a temporary restraining order or a preliminary injunction.  Docket No. 2.  In his habeas petition, petitioner brings a claim for violation of 8 U.S.C. § 1226(a) (Count I); a claim for violation of the Immigration and Nationality Act ("INA") Bond Regulations, 8 C.F.R. §§ 236.1, 1236.1, and 1003.19 (Count II); a claim for violation of the Administrative Procedure Act, 5 U.S.C. § 706(2) (Count III), and a claim for violation of the Due Process Clause of the Fifth Amendment (Count IV).  Docket No. 1 at 16-19, ¶¶ 45-61.  Petitioner asks the Court to issue a writ of habeas corpus requiring respondents to either release petitioner immediately or, in the alternative, schedule him for a custody redetermination hearing pursuant to 8 U.S.C. § 1226(a) before an immigration judge within seven days.[3]  *Id.* at 19.  In his motion for a temporary restraining order or preliminary injunction, petitioner argues that he is detained pursuant to 8 U.S.C. § 1226(a) and is entitled to release or a bond hearing.  Docket No. 2 at 7-14, 16.

---

[3] Petitioner also asks the Court to enjoin respondents from transferring petitioner outside the jurisdiction of the District of Colorado pending resolution of the case and to award petitioner attorney's fees and costs.  Docket No. 1 at 20.

3

## II. ANALYSIS

The parties disagree on the statutes that control petitioner's detention. Petitioner contends that his detention is controlled by 8 U.S.C. § 1226 because § 1226 governs the detention of "noncitizens like Petitioner who are present without inspection, face inadmissibility charges in removal proceedings due to their entrance without inspection, and who do not have certain criminal legal contacts." Docket No. 1 at 14, ¶ 37. Because he believes that § 1226 applies, petitioner argues that respondents must release him or provide him a bond hearing. *See id.* at 19. Respondents, however, contend that 8 U.S.C. § 1225(b)(2)(A) applies to petitioner, and petitioner is therefore not entitled to a bond hearing, but is rather subject to mandatory detention. *See* Docket No. 12 at 3-10.

The Court has analyzed this issue on three different occasions, consistently determining that the detention of petitioners who were detained when already present in the United States without inspection and who face removal proceedings due to their entrance without inspection is governed by 8 U.S.C. § 1226. *Garcia-Perez v. Guadian*, No. 25-cv-04069-PAB, 2026 WL 89613, at *2-4 (D. Colo. Jan. 13, 2026); *Alfaro Orellana v. Noem*, No. 25-cv-03976-PAB, 2025 WL 3706417, at *2-4 (D. Colo. Dec. 22, 2025); *Florez Marin v. Baltazar*, No. 25-cv-03697-PAB, 2025 WL 3677019, at *1-4 (D. Colo. Dec. 18, 2025). Just like the petitioners in the Court's past cases, the Court finds that the petitioner in this case is detained pursuant to 8 U.S.C. § 1226, and is thus entitled to a bond hearing.

The INA "contemplates two detention regimes for noncitizens pending removal proceedings," one controlled by § 1225 and one controlled by § 1226. *Hernandez v. Baltazar*, No. 25-cv-03094-CNS, 2025 WL 2996643, at *3 (D. Colo. Oct. 24, 2025)

(citation omitted).  Section 1225 mandates detention pending removal proceedings, providing that, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained."  8 U.S.C. § 1225(b)(2)(A).  Unless certain exceptions are present, as provided for in §§ 1225(b)(2)(B) and (C), § 1225 "mandates detention without the opportunity for a bond hearing for the noncitizens to whom it applies."  *Hernandez*, 2025 WL 2996643, at *3.  Section 1226, on the other hand, does not mandate detention, providing that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Under § 1226(a)(2), the Attorney General has the discretion to release a noncitizen on bond while removal proceedings are pending.  8 U.S.C. § 1226(a)(2).  "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."  *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018).

Respondents argue that *Jennings* supports the conclusion that § 1225(b) applies to "applicants for admission," which encompasses both noncitizens just arriving in the United States and noncitizens who are already present.  Docket No. 12 at 4.  "[A] proper understanding of the relevant statutes, in light of their plain text, overall structure, and uniform case law interpreting them, compels the conclusion that § 1225's provision for mandatory detention of noncitizens 'seeking admission' does not apply to someone like [petitioner], who has been residing in the United States for more than two years." *Mendoza Gutierrez v. Baltasar*, No. 25-cv-2720-RMR, 2025 WL 2962908, at *5 (D. Colo. Oct. 17, 2025) (citation omitted) (collecting cases).

5

The Court disagrees with respondents' contention that *Jennings* supports mandatory detention. The Supreme Court in *Jennings* held that, "[i]n sum, U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2)" and that "[i]t also authorizes the Government to detain certain aliens *already in the country pending the outcome of removal proceedings* under [ ] § 1226(a)." *Jennings*, 583 U.S. at 289 (emphasis added). Therefore, *Jennings* distinguishes between noncitizens seeking admission, who are subject to § 1225, and noncitizens who are already present in the country, who are subject to § 1226.

Respondents also point to *Jennings's* finding that § 1225(b)(2) serves as a "catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." Docket No. 12 at 7 (quoting *Jennings*, 583 U.S. at 287) (emphasis omitted). Respondents argue that petitioner falls within this catchall provision. *Id.* This language from *Jennings* does not stand for the proposition that any "applicant for admission" who falls outside § 1225(b)(1) must necessarily be covered by § 1225(b)(2). "While it is true that Section 1225(b)(2) is broader than § 1225(b)(1), that does not mean that § 1225(b)(2) applies to *all* other noncitizens in the United States who have not been admitted." *Hernandez*, 2025 WL 2996643, at *6 (quoting *Mendoza Gutierrez*, 2025 WL 2962908, at *6) (internal quotations omitted). Furthermore, *Jennings* "did not address exactly which noncitizens are covered by § 1225(b)(2)." *Briales-Zuniga v. Baltazar*, No. 25-cv-03439- NYW, 2026 WL 35227, at *3 (D. Colo. Jan. 6, 2026). To adopt respondents' interpretation of *Jennings* would be to ignore "the greater context from *Jennings* . . . which makes clear that § 1225(b)(2)'s catchall provision—and, in fact, all

6

provisions of § 1225—apply to noncitizens seeking admission into the country, as opposed to those who are already in the country." *Hernandez*, 2025 WL 2996643, at *6 (quoting *Jennings*, 582 U.S. at 289) (internal quotations omitted).

Respondents' argument that § 1225(b)(2)(A) applies to noncitizens already residing in the United States is contrary to the plain language of § 1225. "The weight of authority interpreting § 1225 has recognized that for section 1225(b)(2)(A) to apply, several conditions must be met—in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *Loa Caballero v. Baltazar,* No. 25-cv-03120-NYW, 2025 WL 2977650, at *6 (D. Colo. Oct. 22, 2025) (internal quotation and citation omitted) (quoting 8 U.S.C. § 1225(b)(2)(A)). Section 1225(b)(2)(A)'s requirement that an applicant for admission be "seeking admission" "requires that the applicant must be presently and actively seeking lawful entry into the United States." *Id.* Therefore, noncitizens who "have been here for years upon years and never proceeded to obtain any form of citizenship...are not 'seeking' admission" as defined in § 1225(b)(2)(A). *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025). While these kinds of noncitizens, like petitioner, "may technically be a noncitizen present in the United States who has not been admitted [making] them an applicant for admission," that does not mean that they are "seeking admission." *See id.* (internal quotations omitted).

Respondents point to § 1225(b)(1)(A)(i) for the proposition that mandatory detention is not limited to noncitizens arriving in the United States. *See* Docket No. 12 at 4-5. Section 1225(b)(1)(A)(i) provides:

7

> If an immigration officer determines that an alien . . . who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review.

8 U.S.C. § 1225(b)(1)(A)(i).  Respondents argue that § 1225(b)(1)(A)(i)'s reference to § 1225(b)(1)(A)(iii), which in turn references "some noncitizens who have *already* been residing in the United States and are inadmissible," demonstrates that § 1225 is applicable to noncitizens like petitioner.  *See* Docket No. 12 at 4-5.  However, § 1225(b)(1)(A)(i) and (iii) are "better understood as carve outs for the 'certain other aliens' that do not fall into § 1225's otherwise general application to *arriving* [non]citizens."  *Hernandez*, 2025 WL 2996643, at *6 (citing 8 U.S.C. § 1225(b)(1)).  Respondents also rely on 8 U.S.C. § 1225(a)(3) for the proposition that § 1225 recognizes that "the *status* of being an applicant for admission is . . . one way that a noncitizen may be 'seeking admission.'"  Docket No. 12 at 5.  Section 1225(a)(3) states that "[a]ll aliens...who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers."  8 U.S.C. § 1225(a)(3).  The Court rejects respondents' argument that an applicant for admission is necessarily seeking admission.  "The 'otherwise seeking admission' language is simply a catch-all provision to describe individuals seeking admission and subject to inspection who may not fit the definition of 'applicant for admission,' such as a person not currently present in the United States."  *Loa Caballero*, 2025 WL 2977650, at *6 n.4.

Respondents argue that § 1226(a)'s "general detention authority, which permits the issuance of warrants to detain noncitizens for their removal proceedings, must be read alongside § 1225, which *specifically* addresses the detention of applicants for

8

admission." Docket No. 12 at 9. Respondents contend that § 1226 "does not displace the more specific provisions in § 1225." *Id.* As the Court has already found, petitioner is subject to detention under § 1226, and a "noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226." *See Hernandez,* 2025 WL 2996643, at *6 (citation omitted).

Congress's 2025 amendment of § 1226 to add subsection (c)(1)(E) provides further support that petitioner is subject to § 1226. Section 1226(c)(1)(E) mandates detention for a narrow category of noncitizens who entered the country without inspection. 8 U.S.C. § 1226(c)(1)(E). In January 2025, Congress amended § 1226, adding § 1226(c)(1)(E). *See* Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). Section 1226(c)(1)(E) provides that the "Attorney General shall take into custody any alien who—"

> (E)(i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and
>
> (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1)(E). This provision would be meaningless if noncitizens already residing in the United States were all subject to mandatory detention. *See Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *10 (N.D. Cal. Sept. 12, 2025) ("If Congress amended Section 1226 to create mandatory detention for certain inadmissible

9

noncitizens, it follows that those noncitizens were not already subject to mandatory detention.").

For the foregoing reasons, "federal district courts have overwhelmingly rejected Respondents' broad interpretation of section 1225(b)(2)." *See Loa Caballero*, 2025 WL 2977650, at *5 (internal quotation and citation omitted) (collecting cases). This Court has similarly rejected respondents' interpretation. *See Florez Marin*, 2025 WL 3677019, at * 4; *Alfaro Orellana*, 2025 WL 3706417, at *4; *Garcia-Perez*, 2026 WL 89613, at *4.

Accordingly, the Court finds that petitioner is being detained under 8 U.S.C. § 1226(a) and not by § 1225(b)(2)(A). Because there is no evidence that petitioner has been provided a bond hearing, his current detention violates § 1226(a). The Court will grant the habeas petition on Count I and order respondents to provide petitioner a bond hearing within seven days of the date of this order.[4] *See Garcia Cortes v. Noem,* No. 25-cv-02677-CNS, 2025 WL 2652880, at *5 (D. Colo. Sept. 16, 2025) (ordering respondents to provide a bond hearing within seven days of the court's order granting the habeas petition); *Loa Caballero*, 2025 WL 2977650, at *1 (same); *Hernandez*, 2025 WL 2996643, at *8 (same). The Court declines to order petitioner's release as a remedy because "§ 1226(a) does not require release—it provides DHS the discretion to grant an alien release on bond." *Briales-Zuniga*, 2026 WL 35227, at *4. Furthermore,

---

[4] Because the Court will grant the habeas petition on the basis of Count I, it will not reach Counts II, III, and IV. See *Hernandez*, 2025 WL 2996643, at *8 ("the Court declines to adjudicate Petitioner's due process claim on the merits at this time because the Court grants the relief Petitioner seeks based on the applicability of § 1226(a)"). Moreover, because the motion for a temporary restraining order or preliminary injunction requests identical relief to the habeas petition, the Court will deny it as moot. Finally, petitioner's request that the Court enjoin respondents from transferring petitioner outside the jurisdiction of the District of Colorado pending resolution of the case is also moot because the Court will grant the habeas petition.

an immigration judge is better suited to consider whether petitioner poses a flight risk or danger.[5]  *See id*.; *Loa Caballero*, 2025 WL 2977650, at *9.

### III. CONCLUSION

Therefore, it is

**ORDERED** that the Verified Petition for Writ of Habeas Corpus [Docket No. 1] is **GRANTED**.  It is further

**ORDERED** that Plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction [Docket No. 2] is **DENIED as moot**.  It is further

**ORDERED** that Petitioner-Plaintiff's Unopposed Motion to Extend Page Limit for Reply to Defendant-Respondents' Combined Response (ECF 12) [Docket No. 13] is **DENIED as moot**.  It is further

**ORDERED** that respondents shall provide petitioner with a bond hearing under 8 U.S.C. § 1226(a) within **seven days** of the date of this Court's order.  It is further

---

[5] As for petitioner's request for attorney's fees, *see* Docket No. 1 at 20, the Court will not consider the request because petitioner fails to comply with the Local Rules of the District of Colorado.  A motion for attorney's fees must be filed in accordance with D.C.COLO.LCivR 54.3.  See D.C.COLO.LCivR 54.3 ("Unless otherwise ordered, a motion for attorney fees shall be supported by affidavit. . . . The Motion shall include . . . for each person for whom fees are claimed: (1) a summary of relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed.").

**ORDERED** that within **five days** of petitioner's bond hearing, the parties shall file a status report indicating whether the bond hearing was held and whether bond was granted or denied.

DATED January 26, 2026.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge